UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CARTER SIMMONS,

        Plaintiff,

v.                                                                                              Case No. 11-CV-11106
                                                                                                Honorable Denise Page Hood
UNIVERSITY OF MICHIGAN,

        Defendant.

_____/

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Carter Simmons filed the present action in this Court on March 17, 2012. Simmons's complaint alleges three claims: violation of the Americans with Disabilities Act (ADA), violation of Title VII of the Civil Rights Act of 1964, and violation of the Family and Medical Leave Act (FMLA). Now before the Court is the University of Michigan's Motion for Summary Judgment, filed August 16, 2012. Plaintiff filed an untimely response. For the reasons stated below, Defendant's Motion for Summary Judgment is GRANTED.

**I.**

Simmons began working with the University of Michigan in December 1984 as a custodian. [Docket No. 17, Pg ID 86]. The position was physical and would not accommodate any lifting restrictions. [Docket No. 17, Pg ID 89] The job duties included emptying trash into larger trash bins, dusting, vacuuming, sweeping, mopping, cleaning windows and restrooms, cleaning patient rooms, and sanitizing equipment. [Docket No. 17, Pg ID 90–91] When Simmons was promoted to Custodian II, he also had to strip and wax floors. [Docket No. 17, Pg ID 94] He moved to the transportation department in 1999 and then back to the Custodian II position in 2005 [Docket No.

17, Pg ID 92–93, 103] He remained in the Custodian II position the remainder of his tenure with the University. [Docket No. 17, Pg ID 93]

Simmons was a member of the AFSCME Local 1583 union and the terms and conditions of his employment were governed by a collective bargaining agreement (CBA). [Docket No. 17, Pg ID 90] Article 29 of the CBA provides that a leave of absence will not "exceed twelve (12) months, unless extended by the University." [Docket No. 17, Pg ID 134, Art. 29, Sec. A, 238] It further provides that a leave of absence will not exceed two years. *Id.* "[A]n employee who qualifies for disability benefits will be granted a leave of absence for an indefinite period. [Docket No. 17, Pg ID 134–35, Art. A, Sec. B, 239]. Simmons testified that he was aware of these policies. [Docket No. 17, Pg ID 91].

In May 2006, Simmons was involved in an automobile accident. [Docket No. 17, Pg ID 101] Simmons was on FMLA leave from May 2006 until October 2006. [Docket No. 17, Pg ID 101, 106]. Simmons returned to work with restrictions: he could lift no more than a certain amount of weight,[1] could do no frequent bending or twisting, was required to be able to sit when necessary, and could work no more than 40 hours per week. [Docket No. 17, Pg ID 106] Simmons admitted that he could not perform the duties of his position as a custodian. [Docket No. 17, Pg ID 106] Simmons' supervisor communicated to Simmons that he would have to work regardless of the restrictions. [Docket No. 17, Pg ID 106] Simmons worked until June 2007 against these restrictions. [Docket No. 17, Pg ID 106–07; 136–37] At some point, he re-injured himself. [Docket No. 20, Pg ID 264] The University placed Simmons on unpaid medical non-FMLA leave from October 20, 2007 until May

---

[1]In the deposition, Simmons was asked whether he was restricted to lifting no more than 30 pounds. He answered "I don't remember what they were. I knew I had restrictions." [Docket No. 17, Pg ID 106].

19, 2008. [Docket No. 17, Pg ID 138–40, Docket No. 20, Pg ID 238].

In February 2008, Simmons met with Dr. Steve R. Geiringer, M.D. for a consultation examination. [Docket No. 17, Pg ID 141] Dr. Geiringer concluded that "there [was] no need for limitation of [Simmons'] work activities in any fashion." [Docket No. 17, Pg ID 145] On March 20, 2008, Simmons was told to report back to work under his former supervisor. [Docket No. 17, Pg ID 108] However, he was later sent home because he could not perform his job with restrictions. [Docket No. 17, Pg ID 108] Simmons provided the University with a Return to Work letter dated April 16, 2008 from Dr. Kishor Patel. [Docket No. 17, Pg ID 108, 146, Docket No. 20, Pg ID 245]. Simmons was restricted to lifting no more than 20 pounds and could do no pushing, pulling, or lifting until May 7, 2008. [Docket No. 17, Pg ID 146, Docket No. 20, Pg ID 245] On May 1, 2008, the University contacted Simmons and informed him that his medical leave of absence was about to expire and that he must make arrangements to either extend his leave or return to work. [Docket No. 17, Pg ID 147, Docket No. 20, Pg ID 247]

Simmons began seeing Dr. Mark Strickler, who released Simmons to work on May 7, 2008 with the following restrictions: lift no more than 50 pounds, no frequent lifting of more than 20 pounds, and avoid frequent twisting and bending. [Docket No. 17, Pg ID 148, Docket No. 20, Pg ID 249–52, 254] Simmons did not return to work in May 2008 due to these restrictions. [Docket No. 17, Pg ID 110–11, 152] Dr. Stricker released Simmons to work on July 14, 2008 with the same restrictions as previously noted. [Docket No. 17, Pg ID 153, Docket No. 20, Pg ID 256]

In September 2008, Simmons' supervisor Terri Gleason informed Simmons that the University medical examiner released him to work without restriction and that Simmons must return to work by September 15, 2008. [Docket No. 17, Pg ID 111–12] On September 9, 2008, Sabrina

3

Owens also told Simmons that he must report to work or face termination. [Docket No. 17, Pg ID 112] By letter on September 10, 2008, Kristin Miller informed Simmons that because an independent examiner had determined that Simmons could return to work without restrictions, the University could not provide accommodations and he was ineligible for long-term disability and must return to work on September 15, 2008. [Docket No. 20, Pg ID 258] Simmons reported to work with the same restrictions. [Docket No. 17, Pg ID 111, 118] On September 19, 2008, the University informed Simmons that an independent medical examiner had determined that Simmons could work without restrictions and that these findings were confirmed by Simmons' primary physician; the University terminated Simmons' employment. [Docket No. 17, Pg ID 154, Docket No. 20, Pg ID 260]

After negotiating with Simmons' Union, the University rescinded his termination and returned Simmons to work contingent on his agreeing to the terms of a Last Chance Agreement. [Docket No. 17, Pg ID 155, Docket No. 20, Pg ID 267–68] Simmons' discharge was converted to an administrative leave of absence and he was reinstated to the position of Custodian II. [Docket No. 17, Pg ID 155, Docket No. 20, Pg ID 267] The Last Chance Agreement also provided that Simmons was not eligible for benefits. [Docket No. 20, Pg ID 267] He was placed in a 90 day accommodation position and was required to return to the Custodian II position at the end of 90 days. If he was unable to do so, he would then be placed on medical leave until he could return to work without restrictions or until June 2009. [Docket No. 17, Pg ID 155] As an accommodation position, the University placed Simmons in a grounds position, which required him to ride around in a golf cart picking up discarded cigarettes with a "grabber." [Docket No. 17, Pg ID 115–16, 157] In October 2008, Simmons told his supervisors that he could not perform the accommodation

position. [Docket No. 17, Pg 116] The University placed Simmons on medical leave from October 24, 2008 until October 24, 2009. [Docket No. 17, Pg ID 158–59] The University then placed Simmons on additional FMLA leave: October 25, 2008 until December 31, 2008 was counted towards 12 weeks of FMLA leave for the 2008 calendar year, and January 1, 2009 until March 25, 2009 was counted towards 12 weeks of FMLA leave for the 2009 calendar year.[2] [Docket No. 17, Pg ID 162–64] Simmons was instructed that he must return to work on or before March 25, 2009 to be placed in the same or an equivalent position. [Docket No. 17, Pg ID 162]

On January 14, 2009, Dr. Geiringer examined Simmons a second time and found that work-based limitations were not needed. [Docket No. 17, Pg ID 167] On February 10, 2009, the University informed Simmons that he was released to return to work without restriction and that he must report back to work on February 16, 2009. [Docket No. 17, Pg ID 168] On February 11, 2009, his physician, William J. Gabriel, M.D., informed the University that Simmons was diagnosed with major depression and mood disorder. He indicated that "Simmons continue[d] to experience symptoms that prevent him from working at this time . . . [and] it is not clear . . . when Mr. Simmons might be able to resume work, even on a restricted basis." [Docket No. 17, Pg ID 169] Dr. Gabriel suggested that Simmons be medically retired. [Docket No. 17, Pg ID 169] On October 19, 2009, Simmons' physician concluded that Simmons could return to work with increased restrictions: lift no more than 35 pounds maximum twice per day, lift no more than 15 pounds frequently, avoid twisting and bending, and sit and stand as needed. [Docket No. 17, Pg ID 170]

On October 27, 2009, the University informed Simmons that it could not accommodate his restrictions and that his two year leave of absence had expired; the University terminated Simmons

---

[2] The University argues that the additional FMLA leave was a mistake.

5

effective October 26, 2009. [Docket No. 17, Pg ID 171, Docket No. 20, Pg ID 290] The University conducted a discharge appeal hearing to review his termination on November 5, 2009. [Docket No. 17, Pg ID 172] Simmons' Union declined pursuing arbitration. [Docket No. 17, Pg ID 174] Subsequent to his termination, Simmons bid on several University positions. [Docket No. 17, Pg ID 85, 127]

## II.

Summary judgment is appropriate in cases where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of demonstrating that summary judgment is appropriate. *Equal Employment Opportunity Comm'n v. MacMillan Bloedel Containers, Inc.*, 503 F.2d 1086, 1093 (6th Cir. 1974). The Court must consider the admissible evidence in the light most favorable to the non-moving party. *Sagan v. United States of Am.*, 342 F.3d 493, 497 (6th Cir. 2003).

"At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party *only* if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (emphasis added). To create a genuine issue of material fact, the nonmovant must do more than present some evidence of a disputed fact. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249–50. Any dispute as to a material fact must be established by affidavits or other documentary evidence. Fed. R. Civ. P. 56(c). "If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (citations omitted). Accordingly, a nonmovant "must produce evidence that would be

sufficient to require submission to the jury of the dispute over the fact." *Mathieu v. Chun*, 828 F. Supp. 495, 497 (E.D. Mich. 1993) (citations omitted). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris,* 550 U.S. 372, 380 (2007).

### III.

#### A.     Family Medical Leave Act

Under the FMLA, an eligible employee is entitled to 12 weeks of leave during any 12 month period "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 28 U.S.C. § 2612(a)(1)(D). An eligible employee (1) has been employed for at least 12 months, (2) has worked at least 1,250 hours during the 12 month period immediately preceding the beginning of the leave, and (3) is employed at a worksite with at least 50 employees within 75 miles of the worksite. 29 C.F.R. § 825.110(a). Whether an employee is eligible for FMLA leave is determined on the date the FMLA starts. 29 C.F.R. § 825.110(d). The employee must re-qualify for an additional 12 weeks of FMLA leave. *See Davis v. Michigan Bell Telephone Co.*, 543 F.3d 345, 350–52 (6th Cir. 2008).

Simmons alleges that the University denied him benefits he was entitled to under the FMLA or, specifically, that the University failed to restore him to the Custodian II or an equivalent position. 29 U.S.C. § 2615(a)(1) makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of . . . any right provided" under the FMLA. The Sixth Circuit has recognized this section as the basis for an entitlement theory of recovery. *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 707 (6th Cir. 2008). To prevail under an entitlement theory, Simmons must show that: (1) he was

7

an eligible employee, (2) the University was an FMLA defined employer, (3) he was entitled to FMLA leave, (4) he gave the University notice of his intent to take leave, and (5) the University either denied him FMLA benefits to which he was entitled. *Hoge v. Honda of Am. Mfg.*, 384 F.3d 238, 244 (6th Cir. 2004).

Despite Simmons' argument to the contrary, the University's claim that Simmons was not a FMLA qualified employee has merit. It appears that Simmons far exceeded his entitled FMLA leave. In order to qualify for a second period of FMLA leave, Simmons had to work 1,250 hours within a 12 month period. Simmons' first leave ended in October 2006. He then worked until June 2007 when he re-injured his back. In the two years following, Simmons only worked a few days. Even if the Court assumed that Simmons worked a full 24 hours on each day he reported to work, Simmons would still fall short of the required 1,250 hours. Nor does the University's oversight in giving Simmons two FMLA leave periods change the result. Simmons would still be required to work 1,250 hours during the 12-month period preceding the start of his requested FLMA leave. Simmons only worked a handful of days in the preceding two years before his requested leave. The Court finds that Simmons is not a FMLA qualified employee.

Under the FMLA, "[q]ualifying employees who return to work within that 12-week period are entitled to be reinstated to their previous position, or 'to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment.'" *Edgar v. JAC Prods.*, 443 F.3d 501, 506 (6th Cir. 2006) (quoting 29 U.S.C. § 2614(a)(1)). "The right to reinstatement guaranteed by 29 U.S.C. § 2614(a)(1) is the linchpin of the entitlement theory because 'the FMLA does not provide leave for leave's sake, but instead provides leave with an expectation [that] an employee will return to work after the leave ends.'" *Id.* at 507 (quoting *Throneberry v. McGehee*

*Desha County Hosp.*, 403 F.3d 972, 978 (8th Cir. 2005)). However, "an employee loses the right to reinstatement 'if the employee is unable to perform an essential function of the position because of a physical or mental condition . . . .'" *Id.* at 516 (quoting 29 C.F.R. § 825.214(b)).

The University contends that Simmons could not return to his former Custodian II position and, therefore, was not entitled to reinstatement. The custodian position could not be performed with work restrictions. It is a physically demanding job; a fact of which Simmons was aware. Yet, when asked to report to work, Simmons was not released to work without restrictions. Simmons even admits that he was not able to perform his job duties. His work restrictions actually worsened. When asked to report to work a final time, Simmons' physician indicated that it was doubtful that Simmons would ever be able to return to work due to depression and mood disorder and suggested that Simmons should be allowed to medically retired. It is undisputed that Simmons was not qualified to perform the essential functions of a Custodian II or an equivalent position; no reasonable jury would find otherwise. The Court grants summary judgment in the University's favor as to Simmons' FMLA claim.

### B.     Americans with Disabilities Act

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). An aggrieved employee may prove disability discrimination by either direct or indirect evidence. *Monette v. Elec. Data Systems Corp.,* 90 F.3d 1173, 1186 (6th Cir. 1996). A claim based on indirect evidence requires the plaintiff to first establish a *prima facie* case for disability discrimination. *Id.* at 1186. A *prima facie* claim for disability

discrimination under the ADA requires that Simmons show that (1) he is disabled, (2) he is qualified to perform the position, with or without reasonable accommodation, and (3) but for his disability, he would not have been discharged. *Frengler v. GM,* 2012 U.S. App. LEXIS 11654, 4 (6th Cir. 2012) (citing *Lewis v. Humboldt Acquisition Corp.,* 681 F.3d 312 (6th Cir. 2012)). Once a *prima facie* case is proven, the burden shifts to the employer to give some non-discriminatory reason for discharging the employee. *Burress v. City of Franklin*, 809 F. Supp. 2d 795, 810 (M.D. Tenn. 2011). If the employer provides such a reason, the burden shifts back to the employee to show by a preponderance of the evidence that the reason was only pretextual. *Id.*

Simmons cannot make out a prima facie case because he could not perform the duties of the Custodian II position, with or without accommodations. Simmons concedes several times that he was unable to perform the duties of his position as custodian. The University gave him an accommodation position that involved sitting in a golf cart and picking up cigarettes with a "grabber." He admits that he could not perform the duties of this position. Simmons presents no evidence that he was able to perform his position as custodian. He simply concludes without support that he is qualified. Nor does he provide any evidence that the University's reasons were pretextual. Simmons argues that he was discharged then brought back and forced to sign the Last Chance Agreement. However, this does not establish pretext. The University gave Simmons an accommodation position and, after he indicated he could not perform the position, more than a year of additional leave. In fact, his physician never released him to return to work. Accordingly, the Court grants summary judgment in the University's favor and dismisses the ADA claim.

### C. Title VII Race Discrimination

The burden shifting approach articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S.

792 (1972), applies to claims for race discrimination. Simmons must establish a *prima facie case* and create a presumption of discrimination by showing by a preponderance of the evidence: (1) that he belongs to a protected class; (2) that he was subjected to an adverse employment action; (3) that he was qualified for the job; and (4) that he was treated differently from similarly situated employees from a nonprotected class. *McDonnell Douglas,* 411 U.S. at 802; *Talley v. Bravo Pitinio Restaurant*, 61 F.3d 1241, 1246 (6th Cir. 1995). Alternatively, a plaintiff could establish a *prima facie* case by presenting credible, direct evidence of discriminatory intent. *Terbovitz v. Fiscal Court of Adair County*, 825 F.2d 111, 114–15 (6th Cir. 1987).

If a plaintiff establishes a *prima facie* case, the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employment decision. *McDonnell Douglas*, 411 U.S. at 802–03. Once the employer carries this burden, the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the legitimate reasons offered by the employer were merely pretext for discrimination. *Id.*; *Ang v. Proctor Gamble Co.*, 932 F.2d 540, 548 (6th Cir. 1991). The plaintiff may meet this burden by showing: (1) the stated reasons had no basis in fact; (2) the stated reasons were not the actual reasons; or (3) the stated reasons were insufficient to explain the employer's actions. *Wheeler v. McKinley Enters*, 937 F.2d 1158, 1162 (6th Cir. 1991). The burden of persuasion always, however, remains with the plaintiff. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993).

Simmons argues that he was treated differently than his white coworker Tom Jones. He explains that he was forced to sign a Last Chance Agreement, was terminated, and denied permanent long-term benefits unlike his similarly situated white coworker. The Court notes that Simmons relies on little more than conclusions and speculation to support his race discrimination, which is

insufficient to establish a genuine issue of material fact. *See Anderson*, 477 U.S. at 249–50. He provides the Court with no evidence showing that the decision to place Mr. Jones on long-term disability and to deny Simmons leave was motivated by race. He only submits portions of the CBA, a request for information from the Equal Employment Opportunity Commission (EEOC), and the University's response to the EEOC request. [Docket No. 20, Pg ID 298, 300–01]

Simmons would have the Court rely on nothing more than his word that Mr. Jones is a similarly situated employee. An allegedly similarly situated employee must be similarly situated in "all of the relevant respects." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998). The failure to identify a similarly situated employee who was treated more favorably than the plaintiff is fatal to the plaintiff's claim under a disparate treatment theory. *Mitchell v. Toledo Hospital*, 946 F.2d 577, 583 (6th Cir. 1992). The similarly situated employee must have the same supervisor, be subject to the same standards, and engaged in conduct of comparable seriousness to the plaintiff. *Id*. Simmons does not provide any evidence on Mr. Jones' supervisor, whether he was subjected to the same standards, and whether he engaged in similar conduct as Simmons. Simmons alleges that Mr. Jones was given accommodations. The record indicates that the University gave Simmons a light position that he said he was unable to perform. Nor does Simmons provide any evidence that Mr. Jones was cleared to work without restriction. Simmons' last physician explained that it was not clear whether Simmons would ever be released to work. The Court finds that Simmons has not raised a genuine issue of material fact as to whether the University's decision to terminate him was based on race. Simmons' Title VII claim is dismissed.

**IV.**

Accordingly,

12

**IT IS ORDERED** that Defendant's Motion for Summary Judgment [Docket No. 17, filed August 16, 2012] is **GRANTED**.

**IT IS SO ORDERED**.

S/Denise Page Hood
Denise Page Hood
United States District Judge

Dated: March 26, 2013

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 26, 2013, by electronic and/or ordinary mail.

S/LaShawn R. Saulsberry
Case Manager